# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MOSSIMO GIANNULLI and LORI LOUGHLIN,<br><br>Defendants. | Case No. 19-cr-10080 |

### DEFENDANTS MOSSIMO GIANNULLI AND LORI LOUGHLIN'S
### NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants Mossimo Giannulli and Lori Loughlin submit this notice to inform the Court of pertinent new authority bearing on their pending motion to compel (ECF No. 693). As Defendants have explained, in light of the Government's fundamentally flawed understanding of its disclosure obligations, they seek an order requiring the Government to produce the FBI Form 302 Reports from its interviews with William "Rick" Singer as well as the underlying interview notes. *See* Defs' Mot. to Compel at 1, 20, ECF No. 693. Last week, Judge Sorokin decided *United States v. Brissette*, No. 16-cr-10137, 2020 WL 708034 (D. Mass. Feb. 12, 2020), which supports Defendants' arguments and illustrates why disclosure of the 302s—and, in particular, the underlying interview notes—is both necessary and proper here.[1]

In *Brissette*, the Government alleged that two Boston City Hall officials violated the Hobbs Act by threatening to withhold permits for a concert at City Hall Plaza unless the company responsible for producing the concert (the "Company") hired union workers. Ex. A at 1-2. The Government posited that the defendants made these threats during a September 2014 meeting with two of the Company's founders and executives. In June 2017 (a year after indicting the

---

[1] The docketed version of the *Brissette* opinion is attached as Exhibit A.

defendants), the lead FBI agent on the case interviewed the Company's third founder in the presence of two Assistant U.S. Attorneys. *Id.* at 2-3. The third founder told the Government that he "probably would have been told" about the September meeting but had no specific recollection of it, said that the Company had begun discussing moving the concert to another venue well before the September 2014 meeting, and "described—at most—an 'ask,' not a threat or a demand" to use union workers. *Id.* at 3-6.

Not all of those statements accurately made it into the final 302. After the FBI agent drafted the 302, it took about a month (and some prompting) for one of the Assistant U.S. Attorneys to review the draft. *Id.* at 3. That attorney—after checking her notes—suggested "five changes or corrections to the [draft] 302," including one that she flagged as "a critical distinction": The draft 302 reported that the founder had said the *decision* to move the concert from the City Hall Plaza was made well before September 2014; the attorney remembered that the founder had said the *discussions* about moving the concert started well before September 2014. *Id.* at 3-4. But the finalized 302 never incorporated that "critical" change. *Id.*

In any case, both the version of the statement in the finalized 302 and the version that the attorney remembered (along with the founder's other statements) were material and exculpatory information. *Id.* at 9-10. But the Government did not produce any of the statements to the defendants until two years later. *Id.* at 12. And upon realizing the statements should have been produced earlier, the Government also realized that the 302 still mistakenly said "decision" rather than "discussions." *Id.* at 12-13. Yet "despite believing it . . . should have [been] disclosed previously, and despite knowing it contained a material error, the [G]overnment disclosed the 302 in June 2019 in an e-mail describing it as merely 'additional discovery,' saying nothing more." *Id.* at 13. The Government stayed quiet about the "discussions"/"decision" error for three weeks,

ultimately disclosing it only after defense counsel informed the Government that they would be moving for sanctions. *Id.* And even then the Government would not admit error; it responded to the motion for sanctions by arguing "that nothing in the 302 constituted exculpatory or *Brady* information." *Id.* at 14. Judge Sorokin's opinion thoroughly explains why that position was "**wrong**," detailing that the Government's improper characterization of the evidence as somehow not exculpatory was indefensible, and holding that three separate statements in the 302 were plainly exculpatory. *Id.* at 14-15 (emphasis added). Further, the Government "substantially exacerbated" its improper conduct by producing the 302 without "identifying or correcting what [it] knew then . . . was a material error" and by its "failure to appreciate, even on reflection, the exculpatory nature of [the] statements." *Id.* at 18 (emphasis in original). The Government was thus "unable to credibly assure the Court that no other exculpatory information had been withheld." *Id.*

\* \* \*

*Brissette* offers a troubling glimpse into the U.S. Attorney's Office's view of its disclosure obligations. The case shows that the U.S. Attorney's Office has engaged in a pattern of failing to recognize, and therefore failing to produce in a manner required by the law and rules, plainly exculpatory information it has in its possession. Furthermore, *Brissette* illustrates that 302s may not be drafted until weeks after a witness interview; that they may not be reliable; and that they may not be promptly corrected by the Government (if at all). These insights further confirm that the only way to ensure the Government has complied with its obligations in this case is by requiring disclosure of the 302s of interviews with Singer as well as the underlying interview notes.[2]

---

[2] Defendants also seek disclosure of all information in the Government's possession that bears on USC's knowledge of Singer's operation. To the extent that information is contained in 302s, the underlying interview notes should be disclosed as well.

Dated: February 21, 2020

Respectfully submitted,

*/s/ Sean M. Berkowitz*

| | |
|---|---|
| George W. Vien (BBO #547411)<br>Joshua N. Ruby (BBO #679113)<br>DONNELLY, CONROY & GELHAAR, LLP<br>260 Franklin Street<br>Suite 1600<br>Boston, MA 02110<br>Phone: 617.720.2880<br>Fax: 617.720.3554<br>gwv@dcglaw.com<br>jnr@dcglaw.com<br><br>Mark E. Beck (*admitted pro hac vice*)<br>Mark Beck Law, A Professional Corporation<br>350 West Colorado Boulevard<br>Suite 200<br>Pasadena, CA 91105<br>Phone: 213.596.7828<br>mbeck@markbecklaw.com<br><br>*Counsel for Mossimo Giannulli*<br><br>David C. Scheper (*admitted pro hac vice*)<br>SCHEPER KIM & HARRIS LLP<br>601 West Fifth Street<br>12th Floor<br>Los Angeles, CA 90071<br>Phone: 213.613.4655<br>Fax: 213.613.4656<br>dscheper@scheperkim.com<br><br>*Counsel for Lori Loughlin* | Sean M. Berkowitz (*admitted pro hac vice*)<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue<br>Suite 2800<br>Chicago, IL 60611<br>Phone: 312.777.7700<br>Fax: 312.993.9767<br>sean.berkowitz@lw.com<br><br>William J. Trach (BBO #661401)<br>LATHAM & WATKINS LLP<br>200 Clarendon Street<br>Boston, MA 02116<br>Phone: 617.948.6000<br>william.trach@lw.com<br><br>Perry J. Viscounty (*admitted pro hac vice*)<br>LATHAM & WATKINS LLP<br>650 Town Center Drive<br>20th Floor<br>Costa Mesa, CA 92626<br>Phone: 714.540.1235<br>perry.viscounty@lw.com<br><br>Roman Martinez (*admitted pro hac vice*)<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW<br>Suite 1000<br>Washington, DC 20004<br>Phone: 202.637.2200<br>roman.martinez@lw.com<br><br>*Counsel for Mossimo Giannulli and Lori Loughlin* |

**CERTIFICATE OF SERVICE**

I certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and that paper copies will be sent on February 21, 2020, to those identified as non-registered participants.

                                                                */s/ Sean M. Berkowitz*
                                                                 Sean M. Berkowitz