# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

MOSSIMO GIANNULLI and LORI
LOUGHLIN,

Defendants.

Case No. 19-cr-10080

## DEFENDANTS MOSSIMO GIANNULLI AND LORI LOUGHLIN'S SUPPLEMENTAL MEMORANDUM REGARDING TRIAL GROUPINGS AND MOTION TO POSTPONE SETTING OF TRIAL DATE

This afternoon, less than 24 hours before the status conference at which the Court intended to set trial dates in this matter, the Government for the very first time produced in discovery *Brady* information that is not only exculpatory, but exonerating for the Defendants the Government has charged with bribery. That discovery consists of Rick Singer's written notes contemporaneously memorializing his discussions with FBI investigators about recorded phone calls that they directed him to make to his clients in order to induce inculpatory statements to be used against those clients in subsequent criminal prosecutions. Singer's notes indicate that FBI agents yelled at him and instructed him to lie by saying that he told his clients who participated in the alleged "side door" scheme that their payments were bribes, rather than legitimate donations that went to the schools. They further note the Government's desire to "nail" one of the defendants "at all costs." In Singer's own words:

> Loud and abrasive call with agents. **They continue to ask me to tell a fib and not restate what I told my clients as to where there money was going - to the program not the coach and that it was a donation and they want it to be a payment.**
>
> I asked for a script if they want me to ask questions and retrieve responses that are not accurate to the way I should be asking the

questions. **Essentially they are asking me to bend the truth** which is what they asked me not to do when working with the agents and Eric Rosen.

**Liz raised her voice to me like she did in the hotel room about agreeing with her that everyone Bribed the schools. This time about asking each person to agree to a lie I was telling them.**

*See* Exhibit A (emphasis added).

This is precisely the kind of exculpatory—and indeed, exonerating—information Defendants have been seeking in their *Brady* motion still pending before Magistrate Judge Kelley, and which the Government has (falsely) claimed doesn't exist.

For instance, in our *Brady* motion (ECF No. 693, 12/13/19), we spelled out exactly the need for production of precisely this kind of evidence:

> **Common sense indicates that FBI interviewers asked Singer what he told his clients about their payments to USC and KWF. Were they told that their direct donations to university departments were bribes?** Were they told that Singer would reroute their KWF donations, and if so, did he tell them those rerouted donations were legitimate? Or were they told that their money would be used to bribe individual USC employees? **Although Singer's answers to those questions are critical to establishing Giannulli and Loughlin's intent with respect to the payments, the Government has not revealed how Singer responded. Indeed, the fact that the Government has never alleged that Singer told Giannulli and Loughlin that their KWF payments were going to Heinel personally is a strong reason to believe he told them the opposite—that the payments were legitimate.**"

ECF No. 693 at 10.

In response (ECF No. 736, 1/14/20), the Government denied that such evidence existed, or that they had withheld any such evidence:

- "The reality is that the government has scrupulously adhered to its discovery obligations in this case, and gone well beyond those requirements[.]" (*Id.* at 1.)

- "[N]otwithstanding the defendants' hyperbolic and unsupported claims, the government is not withholding any exculpatory evidence." (*Id.* at 2.)

- "[T]o the extent the Giannullis wish to argue that they acted in good faith because they believed their payments would go to a USC fund Heinel controlled—instead of into Heinel's pocket—the government has produced the relevant evidence to them." (*Id.* at 21-22 n.14.)

In our reply (ECF No. 807, 1/31/20), we again highlighted that the Government surely had such exculpatory information and that the Court should order its disclosure.

- "What Singer told his clients about their payments is obviously relevant to assessing whether Defendants had any intent to defraud USC." (*Id.* at 9.)

- "Did [Singer] tell them that their donations were legitimate, as he told some other clients? Or did he tell them that their payments were bribes?" (*Id.* at 10 (citation omitted).)

- "The belated disclosures, on the other hand, provide only a vague summary of Singer's response: "Singer did not recall exactly what he said to Giannulli and Loughlin regarding the money." That summary is conveniently vague on the exact issue where the details are crucial." (*Id.* at 11.)

- "If Singer had told Giannulli and Loughlin that the payments were bribes, the Government surely would have said so by now. But it has not. The question is simple: What did Singer say about the extent to which Giannulli and Loughlin knew that their donations were really personal bribes intended to induce Heinel to betray her duties to USC?" (*Id.* at 12.)

In its sur-reply (ECF No. 834, 2/7/20), the Government again continued to deny that any such information existed and that it had withheld any such information regarding the key issue in the case: what did Singer tell the side door clients were the purpose of their payments, suggesting that Singer only said anything to them on this topic in an interview that occurred in December 2019. ("The government has broad powers, but they do not include mental telepathy or time travel. The government cannot disclose witness statements before the witnesses make them." *Id.* at 2.)

The supplemental discovery produced today demonstrates that the Government was simply not being truthful with Defendants or the Court in the above filings, given that as early as October 2, 2018, Singer told agents working on the case the exact information we have been seeking in

discovery, and those agents attempted to bully him into lying and saying something different.  This

belated discovery, which should have been produced no later than 30 days after indictment, is

devastating to the Government's case and demonstrates that the Government has been improperly

withholding core exculpatory information, employing a "win at all costs" effort rather than

following their obligation to do justice. [1]

This disclosure will likely result in a host of additional motion practice beyond that set

forth in our initial trial grouping filing (ECF No. 846), including potential motions to dismiss the

indictment, motions to suppress evidence, and motions for sanctions.  The Government is trying

to benefit from withholding information in violation of its obligations and the Defendants'

constitutional rights, but then force trial as quickly as it can.[2]  The Government should not be

rewarded, nor the Defendants punished, for this kind of egregious lack of candor and violation of

its obligations.

---

[1]  The Government's purported basis for failing to disclose Singer's notes earlier is that on October 28, 2018, "members of the prosecution team leaned that Singer had taken notes on his iPhone about his interactions with the government," and specifically "saw all or part of the first four paragraphs under the entry for October 2, 2018" (cited in full above) and "[a]t that time, the government believed the notes were privileged and did not review them further."  *See* Exhibit B. This explanation for its failed disclosure of what is clearly exculpatory information is outrageous, for two reasons.  First, there is no good faith basis to "believe" that a cooperating witness's contemporaneous notes of his conversations with the government or with other suspects, none of which involved counsel, were privileged.  Second, as the government is plainly aware, Singer's notes of these conversations are not the *Brady* material, rather the fact that Singer said these things to the government is *Brady* information that the government agents on the call were in possession of and were required to disclose within 30 days of indictment.

[2]  That strategy has already worked to the detriment of those Defendants who elected to plead guilty to engaging in the side door.  In those cases this Court has made findings that the Defendants' conduct amounted to bribery based on information provided to it by the government, without the benefit of this evidence that clearly shows that it was not.

4

Accordingly, Defendants respectfully request that this Court postpone the setting of any trial dates until the ongoing *Brady* disputes and resultant additional motion practice can be briefed and decided. It is the only fair way to protect the Defendants' rights.

Dated: February 26, 2020

Respectfully submitted,

/s/ Sean M. Berkowitz

George W. Vien (BBO #547411)
Joshua N. Ruby (BBO #679113)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street
Suite 1600
Boston, MA 02110
Phone: 617.720.2880
Fax: 617.720.3554
gwv@dcglaw.com
jnr@dcglaw.com

Mark E. Beck  (*admitted pro hac vice*)
Mark Beck Law, A Professional Corporation
350 West Colorado Boulevard
Suite 200
Pasadena, CA 91105
Phone: 213.596.7828
mbeck@markbecklaw.com

*Counsel for Mossimo Giannulli*

David C. Scheper (*admitted pro hac vice*)
SCHEPER KIM & HARRIS LLP
601 West Fifth Street
12th Floor
Los Angeles, CA 90071
Phone: 213.613.4655
Fax: 213.613.4656
dscheper@scheperkim.com

*Counsel for Lori Loughlin*

Sean M. Berkowitz (*admitted pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Phone: 312.777.7700
Fax: 312.993.9767
sean.berkowitz@lw.com

William J. Trach (BBO #661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Phone: 617.948.6000
william.trach@lw.com

Perry J. Viscounty (*admitted pro hac vice*)
LATHAM & WATKINS LLP
650 Town Center Drive
20th Floor
Costa Mesa, CA 92626
Phone: 714.540.1235
perry.viscounty@lw.com

Roman Martinez (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Phone: 202.637.2200
roman.martinez@lw.com

*Counsel for Mossimo Giannulli and Lori Loughlin*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent on February 26, 2020 to those identified as non-registered participants.

*/s/ Sean M. Berkowitz*
Sean M. Berkowitz