## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

DAVID SIDOO, *et al.*,

        Defendants.

Case No. 1:19-CR-10080-NMG

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO SEVER PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE 12(B)(3)(D) AND 14

Federal Rule of Criminal Procedure 14, like Rule 8(b), serves to protect a criminal defendant's constitutional right to a fair trial by placing limits on whom the government can force to stand trial together. *See Zafiro v. United States*, 506 U.S. 534, 540 (1993). No matter the burden on the government's resources, defendants must be afforded separate trials if a joint trial would substantially prejudice this fundamental constitutional right. *See id.* In this case, for its own purposes, the government seeks to sweep these rights under the rug for all defendants. The government contends that because it has charged the defendants in a conspiracy, the Court is divested of its role to ensure due process and should simply do the government's bidding without any analysis of the fairness or prejudice to the defendants.[1]

To justify subjecting the defendants to the two proposed group trials, and to avoid the

---

[1] The government has systematically worked to deprive the defendants of their constitutional rights throughout this prosecution, as articulated in detail in the Memorandum in Support of Douglas Hodge's Motion Pursuant to 28 U.S.C. §§ 2255 to Set Aside His Plea, in Part, and for Re-Sentencing on the Remaining Count of Conviction (ECF No. 1144), and the Defendants' Memorandum of Law in Support of Their Motion to Dismiss Indictment with Prejudice or, in the Alternative, for Suppression of Evidence Based on Governmental Misconduct and for Discovery and An Evidentiary Hearing (ECF No. 972).

highly prejudicial and inefficient result of a series of disconnected mini-trials within each of these proceedings, there has to be one, overarching conspiracy among the defendants with some common proof that bears upon more than one non-married defendant's guilt or innocence. The absence of allegations in the Fourth Superseding Indictment (the "Indictment") sufficient to support a single conspiracy is the topic of other motions. *See, e.g.*, ECF No. 1031. This motion is about the *evidence*. Individual defendants—even if charged together—must be tried separately if there is a serious risk that in a joint trial, there will be evidence that is inadmissible against and unduly prejudicial to some of the defendants. *See Zafiro*, 506 U.S. at 539. Joint trials where evidence is admissible against one or two defendants but not against others present a substantial risk of prejudicial spillover, which can result in the impermissible "transference of guilt" from one defendant to another. *See United States v. Sutherland*, 929 F.2d 765, 773 (1st Cir. 1991). Indeed, the government concedes that "evidence of one defendant's guilt cannot be used to convict another." ECF No. 1136 (Opp.) at 7.

The government's entire theory of the case—and the only way it can justify trying any of these defendants together—rests on its contention that the defendants "engag[ed] in a single conspiracy with a common goal." Opp. at 2. It contends that the defendants' distinct conduct is simply "different means of executing the same scheme." *Id.* at 7. Their independent and disconnected goals become a common goal.  Since the government superseded its indictment of David Sidoo to tack on all of the remaining defendants, the defendants have challenged the government's contention that a single conspiracy that satisfies the requirements for a hub-and-spoke conspiracy under *Kotteakos v. United States*, 328 U.S. 750 (1946), has been adequately alleged, or could be proven at trial.

In their Motion to Sever, the defendants informed the Court that in the vast amount of

materials now disclosed, the government has not produced even "the slightest factual support necessary to establish one overarching, single conspiracy among the defendants," and that "[c]ounsel for defendants cannot identify a single fact or common piece of evidence the government could admit, beyond some involvement with Singer, that would be relevant to the acts of *all* of the parent-defendants who are to be tried together in either group." ECF No. 1034 at 5. In response, the government offers nothing but empty promises and general references to evidence that might be relevant in a trial of Rick Singer, but is *not* relevant to the trials of these defendants. There cannot be a single, overarching conspiracy simply because the government says so.

The government will not be able to introduce evidence at trial that connects these defendants into an overarching conspiracy. Instead, the proposed joint trials will consist of evidence admissible as to only one defendant and not as to any others. These trials will not only be highly prejudicial to all of the defendants, but also entirely inefficient, requiring objections from six or more attorneys to every document introduced and resulting in potentially days of trial devoted to only one defendant at a time. The government's opposition all but concedes that there must be a single conspiracy in order for joint trials to be efficient and not unduly prejudicial. But nothing in its opposition to severance or any other motion provides sufficient assurance of a single conspiracy. The government's position is essentially: "it's a conspiracy because we say so – nothing more to see here." But as outlined in the defendants' motion to dismiss (ECF No. 1031), the government has not properly alleged a conspiracy, there is no proof of a single conspiracy and virtually no overlapping evidence among the defendants. This risk therefore of prejudice to these defendants warrants severance.[2]

---

[2] A thorough assessment of the legal and factual issues relevant to severance is premature as the government is still producing discovery. The most recent production was sent on May 18, 2020, two days before this filing. The government continues to produce exculpatory information to the defendants, and the defendants thus do not have a complete picture yet of how each of their cases measures up against that of their co-defendants. The defendants

I.      **The Government's Legal Argument Against Severance Is Premised on the Unprovable Existence of a Single Overarching, Conspiracy**

The government relies primarily on four cases to contend that severance is not appropriate here. Each of these cases is distinguishable because there was no argument in those cases that the defendants did not know each other, or that they participated in multiple conspiracies (if any) as opposed to a single one.

In *United States v. Babich*, No. 16-cr-10343-ADB, 2019 U.S. Dist. LEXIS 4509, at \*3 (D. Mass. Jan. 10, 2019), there was no dispute that the defendants knew each other, and no claim for purposes of severance that there were multiple, distinct conspiracies. *Babich* involved a RICO conspiracy in which the defendants held executive management positions at the same pharmaceutical company that was alleged to be the enterprise underlying the RICO conspiracy. *Id.* The defendant seeking severance did not argue that there were multiple conspiracies—she argued merely that because she participated in only one part of the conspiracy, she would be prejudiced by evidence otherwise admissible against her as a co-defendant regarding a different part of the conspiracy in which she did not participate. *Id.* at \*8-9. Here, the defendants challenge the *admissibility* of evidence relevant to each defendant against any other non-spouse defendant, because the government has not alleged *and has not produced any evidence with which it can prove* the existence of a single, overarching conspiracy encompassing all of the defendants.

In *United States v. DeNunzio*, No. 14-cr-10284-NMG, 2015 U.S. Dist. LEXIS 62092, at \*8-9 (D. Mass. May 12, 2014), there was also no dispute that the defendants knew each other, and no claim for purposes of severance that there were multiple, separate conspiracies. The defendants seeking severance did not argue that they were not part of the same conspiracy with the third

---

reserve their rights, collectively and individually, to seek severance at a later stage, once they have received and had an opportunity to review all of the government's productions, and have more fully developed their defenses.

defendant from whom they wanted separate trials, but rather that certain out-of-court statements made by the third defendant (Lightbody) to and by an unindicted co-conspirator were not made in furtherance of the conspiracy and were inadmissible against them. This Court in *DeNunzio* was not required to determine whether there would be any evidence to establish a conspiracy amongst the defendants in the first place. Instead, the Court concluded that the conversations at issue between the third defendant and the unindicted co-conspirator, even if he was not a co-conspirator, were admissible against the moving defendants under Rule 801(d)(2)(E). *Id.* at *10-13. *DeNunzio* is further distinguishable because that case involved only three defendants set to be tried together, not eight, and thus did not present the same concerns regarding jury confusion in keeping the admissibility of evidence straight. Here, in contrast, trying six or eight defendants whom the government cannot even prove are co-conspirators could "prevent the jury from making a reliable judgment about guilt or innocence," leading the jury "to conclude that a defendant was guilty" based on "evidence of a codefendant's wrongdoing." *See Zafiro*, 506 U.S. at 539.

In *United States v. Flores-Rivera*, 56 F.3d 319, 325 (1st Cir. 1995), the defendant sought severance because he would be prejudiced by being prosecuted alongside major conspirators when he was just a minor participant whose role in the alleged conspiracy was significantly less than that of his co-defendants. As with *Babich* and *DeNunzio*, there was no argument for purposes of severance that there were multiple conspiracies, and thus that the co-defendants' statements could not be used against the moving defendant. Here, in contrast, the defendants are not arguing, at this stage, that any one of them is more or less culpable than the others—they are arguing that they did not conspire together at all. If they conspired with anyone, it was not with each other.

Finally, the government relies on *United States v. O'Bryant*, 998 F.2d 21 (1st Cir. 1993), for the proposition that severance is not required "[e]ven where large amounts of testimony are

irrelevant to one defendant, or where one defendant's involvement in an overall agreement is far less than the involvement of others." Opp. at 7-8 (citing *O'Bryant*, 998 F.2d at 26 (quoting *United States v. Boylan*, 898 F.2d 230, 246 (1st Cir. 1990))). Yet again, the government relies on a case in which there was no argument that there were multiple conspiracies that would limit the relevance and admissibility of evidence as to individual defendants against others.

II.     **The Government's Promises of "Overlapping Evidence" Ignore the Entirely Individualized Evidence That Would Be Required to Show That the Defendants Had the Requisite Knowledge and Intent to Join Any Conspiracy and to Commit the Charged Crimes**

The government criticizes the defendants' severance request as "speculative, vague, and unsupported," but it is the government's opposition that reeks of those qualities. *See* Opp. at 4. The government bears the burden of proving a single conspiracy, and therefore it is on the government to show this Court what *if any* evidentiary overlap there is across defendants bearing upon their participation in this single conspiracy. But the government has not done so even in broad terms, let alone with any specificity. This lack of common evidence is most evident in the requirements of knowledge and intent (prerequisites for any conspiracy participation) and interdependence (necessary to establish one as opposed to several conspiracies).

For any conspiracy charge, "the government must prove that the defendant *intended to agree* with his co-conspirators to commit the substantive offense and *intended to commit* that offense." *United States v. Franco-Santiago*, 681 F.3d 1, 8-9 (1st Cir. 2012). Such an agreement "requires knowledge of what is being agreed to." *Id.* at 9; *see United States v. Monserrate-Valentin*, 729 F.3d 31, 43 (1st Cir. 2013) ("If the government fails to adduce sufficient proof as to the knowledge element, the defendant will not be 'automatically' held liable for the acts of the criminal conspiracy which he could not foresee."). Moreover, each individual defendant's willful agreement to join the agreement must be based on "evidence of his or her own words or actions."

6

*United States v. Guevara*, 706 F.3d 38, 44 (1st Cir. 2013).

Each defendant's knowledge and intent are also relevant to the determination of whether there is a single conspiracy or multiple ones. "[E]ach defendant's state of mind, and not his mere participation in some branch of the venture, is key" to establishing interdependence, a prerequisite to proving a single conspiracy. *Franco-Santiago*, 681 F.3d at 11 (citation omitted). Each defendant must know specifically that his or her participation in one branch of the scheme was "necessary or advantageous to the success of another aspect of the scheme." *Id.* (citation omitted). In other words, "the spoke defendant [must have known] about and agreed to join any larger overarching conspiracy." *Id.* (citing *United States v. Huff*, 609 F.3d 1240, 1244 (11th Cir. 2010)); *see United States v. Morrow*, 39 F.3d 1228, 1234 (1st Cir. 1994). Even if the defendants are all part of a single conspiracy, the government will need to show that each defendant knew about the components of the scheme in which she played no part (on a macro level, the test-taking scheme or the athletic recruitment scheme), and believed that the success of her alleged activity with Singer to get her own child into college "likely depended" on each other defendant's alleged activity with Singer to get his own child into college. *See United States v. Dellosantos*, 649 F.3d 109, 119 (1st Cir. 2011); *United States v. Glenn*, 828 F.2d 855, 859 (1st Cir. 1987).

The government has not pointed to or produced any such evidence. Based on defense counsel's review of the government's voluminous productions to date, there do not appear to be *any* documents, recordings, or other materials showing that any two non-married defendants acted in concert with one another to commit any of the charged offenses; that any defendant believed or understood that his or her efforts to gain admittance to college for his or her child as charged were in any way dependent upon the success of the efforts of any co-defendant in assisting their children in seeking college admission; or that any defendant believed or understood that he or she, or his

or her child, benefitted in any way from the actions of any of the other co-defendants. In fact, the opposite appears to be true: Singer repeatedly pressured prospective clients by telling them that what he was offering was a limited commodity, indicating that it was a competition for his services, not a rising tide that lifts all boats. There was no common goal shared by all of these parents to get their children into schools.  Each defendant had a single goal with respect to their own child and had no interest in the admission of any other defendant's child.

Instead of pointing to even a single piece of evidence that would connect the defendants together in any meaningful way, in its opposition to the defendants' Motion the government summarily assures the Court that it will prove the single conspiracy it has alleged with "voluminous, and overlapping, documentary and audio evidence." Opp. at 3. But the government provides no specifics regarding what this purported overlapping evidence is. The government broadly states that it will offer "[i]ntercepted and consensually recorded calls among Singer and his co-conspirators" against all the defendants "to prove the existence, nature and scope of the charged conspiracy," Opp. at 7, but, as described above, defense counsel have not identified any calls that would be probative of any individual defendant's knowledge of any other defendant's specific participation in Singer's schemes. What any other defendant said during one of his or her calls with Singer about their own child is entirely irrelevant to what Elisabeth Kimmel, or any other defendant, knew about Singer's operations and allegedly agreed to participate in. Even if hypothetically the general tenor of conversations between another defendant and Singer were reminiscent of, for example, conversations between Mrs. Kimmel and Singer, "[m]ere similarity of conduct" does not establish the existence of a conspiracy. *See, e.g.*, *Guevara*, 706 F.3d at 44. That defendant's conversation with Singer is not probative of anything that Mrs. Kimmel did or knew; nor is the evidence of any other defendant's actions or knowledge any more relevant.

Next, the government states generally that "[m]ultiple cooperating witnesses will testify in both trials about the existence and nature of the conspiracy, and the nature of cooperating witness Rick Singer's college counseling business." *Id.* Although the government asserts that these witnesses will testify about "how participants came to be involved in [the conspiracy], and what their respective roles were," the government says nothing about whether these witnesses will testify as to each defendant's knowledge of and intent to agree to the overarching conspiracy. *See id.* That is because they can't. The government has not produced any evidence that, for example, any other parent-defendant knew or ever even spoke with Mrs. Kimmel; there is no scenario in which such a witness could testify to Mrs. Kimmel's intent. Nor could any agent introduce any documentary evidence that bears upon any two defendants' knowledge or state of mind regarding Singer's operations, based on defense counsel's review to date of the materials the government has produced.

Later, the government contends that "[v]irtually all of the evidence the government introduces to prove the existence, nature, scope, operation, and membership of those conspiracies will be relevant and independently admissible against each of the defendants." Opp. at 5. But the evidence the government describes does not bear upon what will be the central issue in the trials - any of the defendants' knowledge or intent at all, or their understanding of whether any of the components of the alleged single scheme were "necessary or advantageous to the success of another aspect of the scheme." *Franco-Santiago*, 681 F.3d at 11. Instead, it pertains only to what Singer, the colleges and universities, and the testing administrators were up to: "USC's admissions and athletic recruitment process," "Singer and his operation," and "the nature and operation of standardized college entrance exams." Opp. at 6-7.  Such evidence would be admissible to show how Singer committed *his* crimes and is not relevant to the knowledge or intent of the parents.

What will these two trials look like in reality? As but one example, in the second trial, the government will need to show that Mrs. Kimmel, who allegedly participated in Singer's athletic recruitment scheme, believed that the success of her participation in that scheme depended upon the success of an entirely different arm of Singer's operation: the test-taking scheme.[3] The government has not pointed to any evidence—because it has none—that Mrs. Kimmel had any knowledge about Singer's test-taking operations, let alone any belief that Singer's entirely separate operation for the benefit of someone else's child might facilitate Mrs. Kimmel's child's admission. Nor has the government produced or pointed to any evidence that Mrs. Kimmel knew of any of the other defendants with whom she is scheduled to stand trial, or knew that any of them worked with Singer to obtain certain test scores on standardized exams for their children. There is no fact witness, other than possibly Singer himself, who can testify about Mrs. Kimmel's state of mind, knowledge, or intent, who can also testify to that of the defendants alleged to have engaged in the test-taking scheme with Singer. And there is no witness who could testify that there is any connection between the defendants.

In the second trial, then, the jury will be bombarded with critical evidence regarding each of the six defendants that relates to only that one defendant (or two, in the case of the Colburns). It will be distracted by regular requests by five attorneys for limiting instructions to be sure the jury knows that testimony or documents or audio recordings do not apply to the other five defendants. Moreover, the jury will listen to evidence regarding the test-taking scheme that has absolutely nothing to do with defendants like Mrs. Kimmel—evidence that is highly prejudicial

---

[3] In the second group, scheduled for trial in January 2021, three defendants are alleged to have participated in Singer's test-taking scheme, three defendants are alleged to have participated in Singer's athletic recruitment scheme, and two defendants are alleged to have participated in both schemes. Of the defendants who are alleged to have participated in Singer's athletic recruitment scheme, one, Mrs. Kimmel, is alleged to have done so at Georgetown University in addition to University of Southern California.

given that the government seeks to frame the defendants as all being guilty of the same conduct despite using entirely different means. In short, there will be no overlap in the evidence necessary to determine if each individual defendant in that trial is, or is not, guilty of the crimes charged, but there will be ample opportunity for the jury to reach an improper conclusion based on days of evidence irrelevant to the majority of the defendants.  The same is true of the first trial, in which each defendant will be prejudiced by significant evidence relevant only to another defendant.  In that first trial with eight different defendants, the need for constant interruption and precise limiting instructions will result in even greater disruption and a high likelihood of jury confusion and prejudice.[4]

Most problematically, without the necessary state-of-mind evidence, the government cannot prove interdependence. And without interdependence, the government's theory of a single conspiracy fails. Moreover, regardless of the number of conspiracies (if any) ultimately proven, without common evidence regarding the defendants' knowledge and intent, the core evidence with respect to each defendant's guilt and with respect to the establishment of an agreement between any co-conspirators is entirely individualized.[5]  What results is a conglomerate proceeding

---

[4] As currently constituted, both trials will have to address issues that are not applicable to all defendants. In the second trial alone, the jury will need to parse testimony regarding Singer's alleged test-taking scheme, Singer's alleged athletic recruitment scheme, different universities' participation in and awareness of each of these schemes, and different levels of alleged awareness by the defendants (and in some instances their children) regarding the nature of each of Singer's schemes. With so many issues to digest, none of which are consistent across any two defendants (other than perhaps married couples), there is a substantial risk of prejudicial spillover in either trial.

[5] For this reason, *United States v. Prange*, 922 F. Supp. 2d 127, 129 (D. Mass. 2013), is distinguishable. In *Prange*, three defendants, each charged with participating in separate conspiracies with a fourth defendant, Prange, moved to sever their trials under Rule 8(b), for misjoinder, and under Rule 14, for prejudicial joinder. Prange had allegedly recruited each of these defendants to participate in an illegal kick-back program with a hedge fund manager who was an undercover FBI agent. *Id.* at 128-129. This Court denied the motion because there would be common proof probative of at least one defendant's guilt in a joint trial. In particular, "proof of the purported agreement between the undercover agent and Prange" would be "probative of Prange's guilt in all three of the alleged conspiracies." *Id.* at 129. Here, in contrast, Singer, the only common participant across all of the defendants, is not on trial; the government does not need to prove Singer's guilt as it would if he were a named defendant. Accordingly, the probative value of any common evidence in this case is substantially diminished compared to that in *Prange*.

collapsing multiple, distinct trials into one. In such circumstances, a jury would be hard-pressed to keep straight the constant admonishments on the admissibility of certain evidence and its corresponding assessments of guilt or innocence. This is precisely the type of prejudicial "mass trial" the Supreme Court cautioned against in *Kotteakos*[6] and for which limiting instructions are an inadequate cure. *See United States v. Baker*, 98 F.3d 330, 335 (8th Cir. 1996) (reversing conviction of one defendant for failure to sever trial from co-defendant, where co-defendant's inculpatory statement to the FBI and certain co-conspirator statements, admissible only against co-defendant, were introduced at trial, because "the risk of substantial prejudice from the spillover effect of the conspiracy evidence and the documents was too high to be cured by less drastic measures, such as limiting instructions," and it was unlikely that "the jury was able to compartmentalize the evidence as it related to each defendant"); *see also United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994) ("The presumption that a jury will adhere to a limiting instruction evaporates where there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense.").

## CONCLUSION

The government cannot inoculate itself against subjecting criminal defendants to highly prejudicial trials simply because it puts the word "conspiracy" in the Indictment. There is no indication in the voluminous evidence produced by the government to date that the government can prove that the defendants conspired together, either collectively or in smaller groups. Absent such evidence, the two proposed trials in this case will consist of substantial amounts of evidence

---

[6] *See Kotteakos*, 328 U.S. at 773 ("We do not think that either Congress … or this Court … intended to authorize the Government to string together, for common trial, eight or more separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all….[I]f the practice here followed were to stand, we see nothing to prevent its extension to a dozen, a score, or more conspiracies and at the same time to scores of men involved, if at all, only separately in them. The dangers of transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, are so great that no one really can say prejudice to substantial right has not taken place.").

that are inadmissible against multiple defendants. Such evidence is highly prejudicial where it is

likely to lead the jury to superimpose the guilt of one defendant upon another. For these reasons,

the defendants respectfully request that their trials be severed from one another.


DATED: May 20, 2020                          Respectfully submitted,

                                             */s/ Eóin P. Beirne*
                                             R. Robert Popeo (BBO # 403360)
                                             Mark E. Robinson (BBO # 423080)
                                             Eóin P. Beirne (BBO # 660885)
                                             Cory S. Flashner (BBO # 629205)
                                             MINTZ, LEVIN, COHN, FERRIS,
                                             GLOVSKY AND POPEO, P.C.
                                             One Financial Center
                                             Boston, MA 02111
                                             (617) 348-1605 (telephone)
                                             (617) 542-2241 (fax)
                                             rpopeo@mintz.com
                                             mrobinson@mintz.com
                                             ebeirne@mintz.com
                                             csflashner@mintz.com

                                             *Counsel for Elisabeth Kimmel*

*/s/ Brian T. Kelly*                         */s/ David E. Meier*
Brian T. Kelly (BBO No. 549566)              David E. Meier (BBO #341710)
Joshua C. Sharp (BBO No. 681439)             Todd & Weld LLP
Lauren M. Maynard (BBO No. 698742)           One Federal Street, 27th Floor
NIXON PEABODY LLP                            Boston, MA 02110
53 State Street                              (617) 720-2626
Boston, MA 02109                             dmeier@toddweld.com
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com                      */s/ Stephen H. Sutro*
lmaynard@nixonpeabody.com                    Stephen H. Sutro, Esq.
                                             Duane Morris, LLP
                                             Spear Tower
Robert Sheketoff (BBO No. 457340)            One Market Plaza, Suite 2200
One McKinley Square                          San Francisco, CA 94105-1127
Boston, MA 02109                             (415) 957-3008
617-367-3449                                 SHSutro@duanemorris.com

*Counsel for Gamal Abdelaziz*                *Counsel for Diane Blake and Todd Blake*

/s/ David S. Schumacher
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)
phooper@health-law.com

Jordan Kearney (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street, Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

*Counsel for Amy and Gregory Colburn*

/s/ Jack W. Pirozzolo
Jack W. Pirozzolo (BBO # 564879)
jpirozzolo@sidley.com
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223-0304

John C. Hueston (*pro hac vice*)
jhueston@hueston.com
Marshall Camp (*pro hac vice*)
mcamp@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

*Counsel for William McGlashan, Jr.*

/s/ Reuben Camper Cahn
Reuben Camper Cahn (*pro hac vice*)
Jennifer L. Keller (*pro hac vice*)
Chase A. Scolnick (*pro hac vice*)
KELLER/ANDERLE LLP
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Tel: (949) 476-8700
rcahn@kelleranderle.com

*Counsel for I-Hsen "Joey" Chen*

/s/ Michael K. Loucks
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Allen J. Ruby (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Defendant Marci Palatella*

/s/ Martin G. Weinberg
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Matthew L. Schwartz (*admitted pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001

*/s/ Tracy A. Miner*
Tracy A. Miner (BBO No. 547137)
Megan A. Siddall (BBO No. 568979)
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
Fax: (617) 273-8004
tminer@mosllp.com
msiddall@mosllp.com

*Counsel for Homayoun Zadeh*

Tel.: (212) 446-2300
Fax: (212) 446-2350
E-mail: mlschwartz@bsfllp.com

*Counsel for Robert Zangrillo*

*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428
andrew.tomback@whitecase.com

*Counsel for John Wilson*

**CERTIFICATE OF SERVICE**

I, Eóin P. Beirne, hereby certify that on May 20, 2020, this document, filed through the CM/ECF system, will be sent electronically to all registered participants in this matter as identified on the Notice of Electronic Filing (NEF).

*/s/ Eóin P. Beirne*
Eóin P. Beirne (BBO # 660885)
