UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No.: 19-10080-NMG |
| (8)   MOSSIMO GIANNULLI, and<br>(14) LORI LOUGHLIN, | ) ) ) ) | |
| Defendants | ) | |

**GOVERNMENT'S CONSOLIDATED SENTENCING MEMORANDUM**

The government submits this memorandum in connection with the sentencing of defendants Mossimo Giannulli and Lori Loughlin. The parties have entered into plea agreements pursuant to FED. R. CRIM. P. 11(c)(1)(C), and, for the reasons set forth below, the government respectfully requests that the Court impose the agreed-upon dispositions: a term of imprisonment of five months, a $250,000 fine, and 250 hours of community service for Giannulli; and a term of imprisonment of two months, a $150,000 fine, and 100 hours of community service for Loughlin.

**I.   THE OFFENSE CONDUCT**

The Court is by now familiar with the facts of this case, and so the government restates them here only briefly. Giannulli and Loughlin, a married couple, conspired with William "Rick" Singer and others to commit mail and wire fraud by agreeing to fabricate portions of their two daughters' applications for admission to the University of Southern California ("USC") so that they could be admitted as purported athletic recruits. Giannulli PSR ¶ 40; Loughlin PSR ¶ 40 (together, the "PSR"). Giannulli also conspired with Singer and others to commit honest services mail and wire fraud by making payments, totaling $500,000, styled as "donations" to designated USC athletic funds and to Singer's non-profit, the Key Worldwide Foundation ("KWF"), as a *quid pro quo* to induce USC athletics administrator Donna Heinel to violate her fiduciary duty to USC by facilitating his daughters' admission to USC as purported athletic recruits. PSR ¶ 40.

A.      The First "Side Door"

Giannulli and Loughlin began working with Singer in 2015. *Id*. ¶ 41. By April 2016, Giannulli, Loughlin, and Singer discussed a "game plan" to secure the admission of the couple's older daughter to USC. *Id*. ¶ 43. In August 2016, Singer told Giannulli and Loughlin that he would "create a coxswain profile" for their daughter, and noted that "[i]t would probably help to get a picture with her on an ERG in workout clothes like a real athlete too." *Id*. ¶ 45. In fact, Giannulli and Loughlin's daughter did not row crew, and was not a coxswain. *Id*. ¶ 49. Yet Giannulli, copying Loughlin, replied: "Fantastic. Will get all." *Id*. ¶ 45. Thereafter, Giannulli sent Singer an e-mail entitled "[my older daughter] rowing," with a photograph of his daughter posing on an ergometer. *Id*. ¶ 46. Giannulli copied his daughter on the e-mail. *Id*.

In September 2016, just days after Singer informed the defendants and their older daughter that a "[p]rofile is being made as a coxswain" for USC, *id*. ¶ 48, Giannulli rebuffed a USC development official who had offered to "flag" his older daughter's application, replying, "Thanks so much, I think we are squared away." *Id*. ¶ 50. Giannulli forwarded the e-mail to Loughlin, noting that it was "[t]he nicest I've been at blowing off somebody." *Id*.

In October 2016, after Heinel secured the conditional admission of Giannulli and Loughlin's daughter to USC as a recruited coxswain, Singer instructed Giannulli to mail Heinel a $50,000 check, payable to "USC Athletics." *Id*. ¶¶ 55-56. Giannulli asked: "For accounting purposes would I categorize this as a donation?" *Id*. ¶ 56. Singer replied: "Yes." *Id*. The next month, Singer forwarded a letter to the defendants from USC that conditionally admitted their older daughter based upon "records [that] indicate that [she has] the potential to make a significant contribution to the intercollegiate athletic program." *Id*. ¶ 60.

In March 2017, Singer's bookkeeper e-mailed Giannulli and Loughlin an invoice for a purported $200,000 donation to Singer's non-profit, KWF. *Id.* ¶ 62. Giannulli later forwarded the invoice to his financial advisor, writing: "Good news my [older] daughter [ ] is in [U]SC . . . bad [news] is I had to work the system." *Id.* ¶ 63.

### B.     The Second "Side Door"

In April 2017, Giannulli thanked Singer for his "great work" and the "end result" he had achieved for their older daughter, and Giannulli and Loughlin instructed him to secure a spot for their younger daughter at USC as well. *Id.* ¶ 67. In July 2017, Singer e-mailed Giannulli and Loughlin to request a photograph for their younger daughter's fake athletic profile. *Id.* ¶¶ 69-71. Loughlin replied: "Moss will get this done." *Id.* ¶ 70. Later that month, Giannulli, copying Loughlin, e-mailed Singer a photograph of their younger daughter—who, like her sister, did not row crew and was not a coxswain, *id*. ¶ 74—posing on an ergometer. *Id.* ¶ 71.

In August 2017, after co-conspirator Laura Janke told Singer she needed additional information about Giannulli and Loughlin's daughter to "finish her resume and add a rowing club based off where she lives," Singer forwarded the request to Giannulli, who then forwarded it to Loughlin. *Id.* ¶ 72. Loughlin then instructed Giannulli to have their younger daughter provide some of the information. *Id*.

In November 2017, after Heinel secured the conditional admission of Giannulli and Loughlin's younger daughter to USC as a recruited coxswain, *id.* ¶ 84, Singer forwarded the defendants a letter from USC indicating that the decision had been based on her "potential to make a significant contribution to the intercollegiate athletic program." *Id.* ¶ 85. Loughlin responded: "This is wonderful news! [high-five emoji]." *Id.* ¶ 86. Giannulli subsequently directed his accountant to mail Heinel a $50,000 check payable to USC's Galen Center. *Id.* ¶¶ 87-89.

In January 2018, Loughlin, Giannulli, and their younger daughter discussed how to avoid the possibility that a high school counselor would disrupt their scheme. When their daughter asked whether she should list USC as her top choice school, Loughlin replied: "Yes . . . . But it might be a flag for the weasel to meddle." *Id*. ¶ 92. Giannulli added: "F[***] him," and remarked that the counselor was a "nosey bastard." *Id*. Loughlin thereafter instructed her daughter: "Don't say too much to that man." *Id*.

Later that month, Singer's bookkeeper e-mailed Giannulli and Loughlin a $200,000 invoice from KWF. *Id*. ¶ 93. Giannulli forwarded the invoice to his financial advisor, writing: "the last college 'donation' for [my younger daughter]. Can't I write this off?" *Id*. ¶ 94.

In March 2018, after learning that Giannulli and Loughlin's daughter had been "flagged" as a "recruit for the crew team," her high school counselor advised a USC admissions official that he had "no knowledge of [her] involvement in crew and based on what I knew of her video blogging schedule [I] highly doubted she was involved in crew." *Id*. ¶ 97. Giannulli confronted the counselor. *Id*. ¶ 103. As contemporaneous notes of the meeting reflect, Giannulli "aggressively asked what [the counselor] was telling USC about his daughters and why [the counselor] was trying to ruin or get in the way of their opportunities." *Id*. Giannulli also "bluntly stated that [his younger daughter] was a coxswain." *Id*.

Later that day, the counselor e-mailed Giannulli that he had advised USC that the defendant's younger daughter "is truly a coxswain." *Id*. ¶ 104. Giannulli, copying Loughlin, replied: "Thank you very much." *Id*. Giannulli then forwarded the e-mail to Singer and another parent involved in Singer's scheme, writing: "Here we go . . . ." *Id*. ¶ 106. Giannulli texted Singer and the other co-conspirator the following day, asking: "Any conversations?" *Id*. Singer replied: "All quiet." *Id*.

## II. SENTENCING RECOMMENDATION

The crime Giannulli and Loughlin committed was serious. Over the course of two years, they engaged twice in Singer's fraudulent scheme. They involved both their daughters in the fraud, directing them to pose in staged photographs for use in fake athletic profiles and instructing one daughter how to conceal the scheme from her high school counselor.

As between the defendants, the evidence suggests that Giannulli was the more active participant in the scheme. He engaged more frequently with Singer, directed the bribe payments to USC and Singer, and personally confronted his daughter's high school counselor to prevent the scheme from being discovered, brazenly lying about his daughter's athletic abilities. Loughlin took a less active role, but was nonetheless fully complicit, eagerly enlisting Singer a second time for her younger daughter, and coaching her daughter not to "say too much" to her high school's legitimate college counselor, lest he catch on to their fraud.

A sentence of five months' imprisonment for Giannulli is comparable to the sentences that have been imposed on similarly situated defendants in this and related cases. As examples:

- Defendant Augustin Huneeus was sentenced to five months in prison after agreeing to pay $300,000 to facilitate his daughter's admission to USC as a fake water polo recruit and using Singer to cheat on her college entrance exam.[1] Like Giannulli, Huneeus was a repeat player, participating in both the side door and exam cheating aspects of Singer's scheme. Huneeus, like Giannulli, also enlisted his daughter in the fraud—directing her to write a fake e-mail to USC about being a collegiate athlete—and he, too, lied to his daughter's high school counselors, in his case to move her SAT exam to a testing site Singer controlled.

- Defendant Devin Sloane was sentenced to four months in prison after agreeing to pay $250,000 to facilitate his son's admission to USC as a fake water polo player. Like Giannulli, Sloane caused his son to pose for a photo to be included in his falsified athletic profile. When a high school guidance counselor expressed skepticism over his son's admission to USC as an athlete, Sloane, like Giannulli, engaged in further deception to conceal the fraud and challenged the counselor's

---

[1] Huneeus's sentence was subsequently reduced to time served (approximately 4.5 months) pursuant to 18 U.S.C. § 3582(c)(1)(A).

"business or legal right" to question his son's admission. And, like Giannulli, Sloane rebuffed a USC development officer who sought a legitimate donation that was unaccompanied by a *quid pro quo*. In contrast to Giannulli, however, Sloane engaged in the scheme only once.

- Defendant Stephen Semprevivo was sentenced to four months in prison after agreeing to pay $400,000 to facilitate his son's admission to Georgetown University as a fake tennis player. Semprevivo also involved his son in the scheme, directing him to send a fake e-mail to the Georgetown tennis coach. Semprevivo, however, engaged in the scheme only once.

- Defendant Toby Macfarlane was sentenced to six months in prison after agreeing to pay $450,000 to facilitate his children's admission to USC as a fake soccer player and fake basketball player.[2] Like Giannulli, Macfarlane engaged in the scheme twice and involved at least one of his children in the fraud. Macfarlane also took additional steps to conceal and benefit from the fraud, by directing Singer to invoice his bribe payments as "consulting fees" so that he could deduct them as business expenses on his tax returns.

A sentence of two months' imprisonment for Loughlin is likewise comparable to sentences imposed on similarly situated defendants. As examples:

- Defendant Jeffrey Bizzack was sentenced to two months in prison after agreeing to pay $250,000 to facilitate his son's admission to USC as a fake volleyball player. Like Loughlin, Bizzack was less involved in the day-to-day details of the scheme. In contrast to Loughlin, however, the evidence in Bizzack's case made clear that he was also a participant in the bribery aspect of the scheme, though he hid the scheme from his son, and he accepted responsibility for his crime by coming forward before the government approached him.

- Defendant Diane Blake has not yet been sentenced, but the government has entered into a plea agreement with her under FED. R. CRIM. P. 11(c)(1)(C), pursuant to which she has agreed to a sentence of six weeks' imprisonment. Like Loughlin, Blake's spouse was the more active participant in the scheme. Unlike Loughlin, Blake participated in the scheme only once and did not make her daughter complicit in her fraud.

- Defendants Gregg and Marcia Abbott were each sentenced to one month in prison after agreeing to pay $125,000 to facilitate cheating on their daughter's college entrance exams. Like Loughlin, the Abbotts engaged in the scheme on two separate occasions. Unlike Loughlin, the Abbotts did not participate in the "side door."

---

[2] Macfarlane's sentence was subsequently reduced to time served (about 3.5 months) pursuant to 18 U.S.C. § 3582(c)(1)(A).

6

In addition to avoiding unwarranted sentencing disparities, the proposed sentences for Giannulli and Loughlin reflect the history and characteristics of each defendant, and the need for the sentences imposed to constitute just punishment and provide for adequate deterrence. *See* 18 U.S.C. § 3553(a). They likewise account for the seriousness of the offenses, and in particular Giannulli and Loughlin's repeated and deliberate conduct, their decision to allow their children to become complicit in crime, and Giannulli's embrace of the fraud by steamrolling an honest high school counselor who tried to do the right thing—all factors that warrant meaningful terms of incarceration. The proposed sentences are, accordingly, sufficient, but not greater than necessary, to achieve the ends of Section 3553(a).

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court accept the agreed-upon sentence of five months imprisonment, a $250,000 fine, and two years of supervised release with 250 hours of community service for Giannulli, and two months imprisonment, a $150,000 fine, and two years of supervised release with 100 hours of community service for Loughlin.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   */s/ Justin D. O'Connell*
ERIC S. ROSEN
JUSTIN D. O'CONNELL
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
Assistant United States Attorneys

Date: August 17, 2020

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by CM/ECF on August 17, 2020.

                */s/ Justin D. O'Connell*
                JUSTIN D. O'CONNELL